UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| OREON J. HUFFMAN, | ) | CASE NO. 4:09 CV 2657 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| STATE OF OHIO, *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff Oreon J. Huffman filed this action under 42 U.S.C. §1983 against the State of Ohio, the Ohio State Penitentiary ("OSP") Correctional Camp, Corrections Officer Little, Corrections Officer Stroud, Food Services Supervisor Mrs. Perry, Nurse Roberts, Sergeant Grall, Lieutenant Thompson, Nurse Turk, the Cuyahoga County Jail, the Lorain Correctional Institution, Corrections Officer Tatarka, and Corrections Officer Fletcher. In the complaint, Huffman asserts that Defendants were deliberately indifferent to his serious medical needs. He seeks $5,000,000.00 in damages.

**Background**

In his complaint, Huffman alleges as follows. Huffman indicates he suffers from injuries to his left wrist and a protruding hemorrhoid. He states he began his incarceration in the Cuyahoga County Jail in September 2008. One month later, he complained to jail medical personal about the

hemorrhoid.  They did not consider it to be a serious problem.  He was then transferred to the Lorain Correctional Institution ("LORCI") in April 2009.  By that time, the hemorrhoid had grown in size and his wrist injuries began to cause him pain.  He brought these medical conditions to the attention of the LORCI staff and was examined by the institution's physician.  He was told he would be scheduled for a colonoscopy, however, he was transferred to the OSP Correctional Camp on May 29, 2009, before the colonoscopy could be performed.

Huffman contends the OSP medical staff did not consider his medical conditions to be serious.  He states Nurse Turk conducted his initial interview.  He indicates he found her to be rude and arrogant.  Although he informed her that he suffered from hemorrhoids, she did not schedule him to see a physician.  He was told he needed to sign up for sick call.  She also confiscated his wrist brace, informing him that he needed a physician's recommendation to have the brace at that facility.

Soon after his arrival at OSP,  Huffman was assigned to work in the kitchen at a job that required him to lift pots and pans, as well as to push brooms and mops.  Huffman also complained that there was only one bathroom near the kitchen and it did not provide much privacy.  He complained to the prison physician that these conditions aggravated his injuries, and on June 10, 2009, he was given a medical restriction recommending he not lift more than 5 pounds.  Huffman, however, was still required to work in the kitchen.

Additionally, Huffman was sent to the Corrections Medical Center ("CMC") for a colonoscopy on June 22, 2009.  The physician at CMC recommended a "no standing job."  When Huffman returned to OSP the next day, he was awakened by Officer Little and told to report for work.  Huffman informed the Officer that he had a medical restriction prohibiting him from working in the kitchen.  Officer Little checked  Huffman's medical file, found no restriction, and ordered

Huffman to report to the kitchen. He was given a one day "lay-in" restriction on June 24, 2009 to allow him to stay in from work until he could see the OSP physician. Thereafter, Dr. Escobar issued a medical restriction prohibiting Huffman from engaging in prolonged standing or walking, prohibiting him from lifting more than 5 pounds, and requiring him to remain close to a shower. At Huffman's insistence, Dr. Escobar spoke to Sergeant Grall and informed him of the restrictions.

The next morning, Huffman was awakened by Officer Fletcher telling him he needed to get up to go to work. Huffman told the officer he had a medical restriction, but the officer had no documentation to support the allegation. It was a Saturday and none of the personnel who knew about the restriction were at work. A nurse was sent to check the medical file. A short while later, Huffman was called to the officers' desk by Officer Tatarka. He was told Ms. Perry had been calling and he needed to get to work. Lieutenant Thompson arrived and told Huffman to go to work, while the lieutenant checked with the medical department. As Huffman was being escorted to the food service area, they passed Nurse Roberts. He asked her to confirm the medical restriction and she indicated to the group that she was unaware of a restriction prohibiting Huffman from working. Huffman claims he worked all day that day. Later, he found another nurse who confirmed the presence of the restriction in the file. A copy of the restriction was faxed to the food service department and to the corrections officers.

## Analysis

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which

relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e).

As an initial matter, Huffman cannot bring a claim for damages against the State of Ohio. The Eleventh Amendment is an absolute bar to the imposition of liability upon state agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985). His claim against the State, therefore, is dismissed.

In addition, the Cuyahoga County Jail, the Lorain Correctional Institution, and the Ohio State Penitentiary Correctional Camp are not proper defendants. Prisons and Jails are not legal entities capable of being sued. Rather, they are facilities owned and provided for by the State of Ohio. *See Nieves v. City of Cleveland*, 153 Fed. Appx. 349, 2005 WL 2033328 (6th Cir. Aug. 24, 2005); *Jones v. Ptl. D. Marcum*, No. C-3-00-335, 2002 WL 786572 (S.D. Ohio Mar. 11, 2002); *Williams v. Dayton Police Dept.*, 680 F. Supp. 1075 (S.D. Ohio 1987); *see also Messer v. Rohrer*, No. C-3-95-270, 1997 WL 1764771, n. 9 (S.D. Ohio Mar. 31, 1997). As noted above, claims against the State of Ohio are barred by the Eleventh Amendment. *Latham*, 395 F.3d at 270. The claim against the jail, LORCI, and OSP, therefore, are dismissed.

To the extent Huffman is suing the institutions as a means of holding individuals employed

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

by them liable for alleged violations of his rights, the claims must also be dismissed. A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Huffman's simple inclusion of these institutions as defendants is not sufficient to hold any of their individual employees liable.

Finally, Huffman does not state a claim for relief under the Eighth Amendment. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

As a threshold matter, Huffman fails to establish the objective component of his claim.

Huffman alleges Nurse Turk was rude and arrogant and that did not immediately schedule an appointment with the physician. Officers Little, Stroud, Tartarka and Fletcher woke him for work and made him attend absent documentation of a medical restriction specifically restricting kitchen work. Lieutenant Thompson made him report to work while he checked on the status of a medical restriction. Plaintiff contends he argued with Sergeant Grall, who also told him to report for work. Nurse Roberts provided incorrect information about his medical file and Officer Tatarka filed a conduct report that Huffman disputes. None of these allegations presents the type of behavior which offends "contemporary standards of decency." *Hudson*, 503 U.S. at 8.

      Moreover, Huffman has not established the defendants acted with a sufficiently culpable mental state to justify a finding of liability under the Eighth Amendment. An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. *Id.* at 837. Mere negligence will not suffice. *Id.* at 835-36. Huffman claims that he was initially given a restriction involving lifting not more than five pounds. His job in the kitchen would not obviously violate that restriction. He was given a medical restriction for "no standing job" by a physician at CMC; however, there was no indication that this restriction was in the prison's medical file when Huffman returned to OSP the next day. Moreover, there is no suggestion that the recommendation from a CMC physician was sufficient to automatically trigger the restriction at OSP. On each occasion, the officers in question made inquiries to the medical department. They were told nothing in his file would prevent him from performing his job in the kitchen. Even liberally construed, the complaint contains no allegations indicating that Defendants acted with a degree of culpability greater than mere negligence.

**Conclusion**

Accordingly, Huffman's complaint is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.


Date: April 16, 2010                    /s/ John R. Adams
                                        JOHN R. ADAMS
                                        UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.